ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| MARISOL RODRÍGUEZ TABOADA<br><br>Recurrente<br><br>v.<br><br>CONSEJO DE TITULARES Y/O JUNTA DE DIRECTORES DEL CONDOMINIO DORAL PLAZA<br><br>Recurridos | TA2026RA00127 | *Revisión Judicial* procedente del Departamento de Asuntos al Consumidor<br><br>Querella Núm.: C-SAN-2025-0022155<br><br>Sobre: Ley de Condominios |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de mayo de 2026.

Comparece ante nos la Sra. Marisol Rodríguez Taboada (señora Rodríguez Taboada o recurrente) mediante recurso de *revisión judicial*. Solicita que revoquemos la *Resolución Sumaria* emitida el 28 de enero de 2026, por el Departamento de Asuntos del Consumidor (DACo). Mediante el referido dictamen, el DACo desestimó la querella presentada por la recurrente.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución Sumaria* impugnada.

**I.**

El caso de epígrafe tuvo su origen el 26 de junio de 2025, cuando la señora Rodríguez Taboada presentó una querella ante el DACo contra el Consejo de Titulares del Condominio Doral Plaza (Consejo de Titulares).[2] A través de la aludida querella, impugnó la selección de una póliza de seguro tipo *full value*. Relató que el 27 de mayo de 2025, el Consejo de Titulares celebró una asamblea extraordinaria a los fines de escoger una póliza de

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.
[2] Véase, Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA), Apéndice 1, pág. 4.

seguros para el Condominio Doral Plaza. Adujo que se presentaron tres (3) tipos de póliza, a saber: dos (2) pólizas *bare walls* y una (1) tipo *full value*. Aseveró que, a pesar de múltiples objeciones, se aprobó la póliza de seguro *full value* sin la anuencia de dos terceras partes (2/3) de todos los titulares del Condominio, conforme lo requiere la Ley Núm. 129-2020, según enmendada, conocida como la *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921 *et seq*. Sostuvo que durante la asamblea se acordó la modificación de los elementos cubiertos por la póliza para que reflejasen la realidad del Condominio, pero que ello no eximía el cumplimiento de la Ley para la aprobación de estos tipos de cubierta. Por todo lo anterior, peticionó a la agencia recurrida, en lo pertinente: 1) que declarase nula la contratación de la póliza en disputa; y 2) que ordenase a la Junta de Directores del Condominio a emitir a la querellante una factura corregida, que reflejase solamente la parte proporcional correspondiente a la cubierta *bare walls* aprobada previamente por el Consejo de Titulares.

Posteriormente, el 19 de septiembre de 2025, el Consejo de Titulares radicó una *Moción en Solicitud de (1) Paralización, (2) Desestimación, y (3) Que se Refiera el Asunto al Comisionado de Seguros*.[3] Arguyó, en síntesis, que la señora Rodríguez Taboada debía asumir el pago de la póliza escogida en la asamblea puesto que su mera oposición no la eximía de ello conforme lo estatuye la Ley de Condominios. Asimismo, adujo que quien tenía jurisdicción en este caso para atender la querella era la Oficina del Comisionado de Seguros de Puerto Rico y no el DACo. Ante lo cual, solicitó a la agencia recurrida que desestimase la querella por falta de jurisdicción y que remitiese el asunto a la Oficina del Comisionado de Seguros de Puerto Rico, según prescrito por el Artículo 66 de la Ley de Condominios. En respuesta, el 13 de octubre de 2025, la querellante presentó una *Solicitud de Anotación de Rebeldía y Resolución Sumaria*.[4] A través del referido escrito, adujo que las disposiciones legales relacionadas a la Oficina del

---

[3] Véase, Entrada Núm. 1 del SUMAC-TA, Apéndice 1, págs. 16-19.
[4] Véase, Entrada Núm. 1 del SUMAC-TA, Apéndice 3, págs. 16-17.

Comisionado de Seguros solamente aplican a controversias atinentes a la interpretación, ejecución o cumplimiento de pólizas de seguro. Asimismo, alegó que la querella versaba sobre la legalidad de la aprobación de la póliza *full value* sin la mayoría requerida por Ley, por lo que era el DACo el ente con jurisdicción para atender este asunto. Peticionó a la agencia que se le anotase la rebeldía al Consejo de Titulares por haber contestado fuera del término reglamentario, que declarase No Ha Lugar la solicitud de paralización y desestimación, y que dictase resolución sumaria a su favor.

Así las cosas, el 28 de enero de 2026, el DACo promulgó la *Resolución Sumaria* recurrida mediante la que desestimó la querella en cuestión.[5] Emitió las siguientes determinaciones de hechos en su dictamen:

1. La parte querellante es titular del apartamento 16-F del Condominio Doral Plaza localizado en Guaynabo, Puerto Rico.

2. El condominio Doral Plaza se encuentra sometido al régimen de propiedad horizontal.

3. El pasado 27 de mayo de 2025 se celebró una asamblea extraordinaria del Consejo de Titulares del Condominio Doral Plaza. Dicha asamblea tenía como propósito la selección de la compañía de seguros del condominio para el periodo del 1 de junio de 2025 al 31 de mayo de 2026. Entre los asuntos a tratar según la agenda, se encontraban la presentación de cotizaciones para el seguro comunal y elección de póliza de seguros con cubierta "barewall" o "Full value".

4. La parte querellante compareció a la asamblea convocada y participó en la misma.

5. Conforme el Acta que obra en el expediente administrativo, durante la asamblea celebrada el 27 de mayo de 2025 la parte querellante presentó una moción para escoger la póliza tipo "barewall" de la Cooperativa de Seguros Múltiples. Esta propuesta fue derrotada por la mayoría de los que votaron. Posteriormente, la titular Nydia Santiago presentó una moción para que se escogiera la póliza "full value" de la Cooperativa de Seguros Múltiples. Esto fue aprobado mediante 16 titulares presentes y 8 proxys a favor, y 8 titulares presentes y 1 proxy en contra. Este acuerdo le fue notificado a todos los titulares del condominio mediante el Acta circulada el 25 de junio de 2025.

6. La parte querellante votó en contra de la selección del seguro escogido en el condominio y solicitó que excluyeran esa porción de su apartamento.

7. El 26 de junio de 2025 la parte querellante presentó la querella de epígrafe a través del internet, la cual fue radicada

5 Véase, Entrada Núm. 1 del SUMAC-TA, Anejo 1.

el 8 de septiembre de 2025. En la misma impugna la selección de la póliza tipo "full value". El fundamento para impugnar esta selección es que considera que la misma fue aprobada por mayoría simple en lugar de por una mayoría de dos terceras (2/3) partes.[6]

Concluyó que la reclamación incoada por la señora Rodríguez Taboada era inmeritoria, toda vez que las disposiciones del Artículo 62 de la Ley de Condominios de Puerto Rico eran diáfanas y el Consejo de Titulares había cumplido con ellas. Es decir, resolvió que la selección de la cubierta *full value* fue aprobada con la mayoría de dos terceras partes (2/3) que requiere la Ley. Así las cosas, el 4 de febrero de 2026, la querellante presentó una *Reconsideración* que no fue atendida por la agencia recurrida dentro del término de quince (15) días estatuido por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.[7]

Inconforme, la señora Rodríguez Taboada presentó el recurso de revisión judicial que nos ocupa a través del cual le imputó al DACo la comisión de los siguientes errores:

Primero: Erró el Departamento al dar por satisfecho el requisito de dos terceras (2/3) partes de todos los titulares exigido por ley mediante los votos de los presentes en asamblea, en lugar de evaluar si dicho umbral se alcanzó respecto a la totalidad de los titulares.

Segundo: Erró el Departamento al validar el acuerdo adoptado sin adjudicar la alegación de la querellante de que lo finalmente contratado no reflejó lo aprobado en la asamblea, aun cuando dicho planteamiento constituye una controversia material e independiente que debía ser resuelta.

El 23 de abril de 2026, el Consejo de Titulares compareció mediante *Alegato del Recurrido*.[8] El 4 de mayo de 2026, la señora Rodríguez Taboada presentó una *Réplica a Alegato del Recurrido,* mientras que el Consejo de Titulares presentó una *Moción de Desglose y/o Eliminatoria* en la que se opuso a la réplica de la querellante y peticionó su desglose.[9] Atendida la réplica y su oposición, declaramos **Ha Lugar** la solicitud de desglose

---

[6] *Id.*

[7] Véase, Entrada Núm. 1 del SUMAC-TA, Apéndice 1, págs. 1-2.

[8] Véase, Entrada Núm. 4 del SUMAC-TA.

[9] Véase, Entradas Núm. 5 y 6 del SUMAC-TA.

presentada por el Consejo de Titulares. Ordenamos el desglose de la *Réplica a Alegato del Recurrido* radicada por la señora Rodríguez Taboada.

Con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de resolver.

**II.**

**A.**

Revisamos la *Resolución* del DACO en el caso del epígrafe, al palio del Artículo 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, *Ley de la judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.* (Ley Núm. 201-2003), el cual dispone en parte que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las decisiones finales de los organismos y agencias administrativas". 4 LPRA sec. 24u; además, Art. 4.006 de la Ley Núm. 201-2003, 4 LPRA sec. 24y. En consonancia, la Ley Núm. 38 de 30 de junio de 2017, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9601 *et seq.*, establece un procedimiento uniforme de revisión judicial a la acción tomada por una agencia de Gobierno al adjudicar un caso. En particular, la Sección 4.5 de la LPAUG, 3 LPRA sec. 9675, que versa sobre el alcance de la revisión judicial, estatuye que este tribunal intermedio sostendrá las determinaciones de hechos de las decisiones de las agencias basadas en evidencia sustancial; revisará en todos sus aspectos las conclusiones de derecho; y podrá conceder al recurrente el remedio apropiado si determina que a éste le asiste el derecho.

Mediante la revisión judicial, esta curia debe examinar que la decisión administrativa encuentre apoyo en la evidencia sustancial que obre en la totalidad del expediente administrativo. El concepto *evidencia sustancial* se ha definido como aquella "prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018), *Hilton Hotels v. Junta Salario Mínimo*, 74 DPR 670, 686 (1953), refrendados en *Graciani*

*Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127-128 (2019). Por ello, el *expediente administrativo*, por su parte, constituye la base exclusiva para la decisión de la agencia en un procedimiento adjudicativo, así como para la revisión judicial ulterior. Sec. 3.18 de la LPAUG, 3 LPRA sec. 9658; *Graciani Rodríguez v. Garaje Isla Verde, supra,* pág. 128. Por igual, examinamos que el ente gubernamental haya realizado una aplicación o interpretación correcta de las leyes o reglamentos que se le ha encomendado administrar. Finalmente, auscultamos que el organismo haya actuado dentro de los parámetros de su ley habilitadora, no de forma arbitraria, irrazonable ni haya lesionado derechos constitucionales fundamentales. Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016).

En suma, al momento de justipreciar la valoración y razonabilidad de las decisiones administrativas adoptadas por las agencias del poder ejecutivo, los tribunales tenemos la obligación de ejercer un juicio independiente de las disposiciones legales para determinar si una agencia ha actuado o no dentro de los límites de su autoridad estatutaria, incluso en los casos de ambigüedad legislativa. Véase, *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024); *Vázquez et al. v. DACo,* 2025 TSPR 56; 216 DPR __ (2025). Claro está, según ha pautado el Tribunal Supremo federal y ha refrendado nuestro alto foro, las interpretaciones y los dictámenes administrativos —realizados por virtud del cumplimiento de un deber oficial y basados en su experiencia especializada— pueden constituir un cuerpo de experiencia y un juicio informado ("body of experience and informed judgment") al que los foros revisores y los litigantes pudiéramos recurrir en cuestiones jurídicas. *Loper Bright Enterprises v. Raimondo, supra,* pág. 388; *Vázquez et al. v. DACo, supra.*

**B.**

Como parte de este ejercicio evaluador y vinculado al caso de autos, debemos considerar lo estatuido en la Ley Núm. 5 de 23 de abril de 1973, según enmendada, *Ley Orgánica del Departamento de Asuntos del*

*Consumidor*, 3 LPRA secs. 341 *et seq.*, la cual establece en su Artículo 7 lo siguiente:

> El Secretario tendrá poderes y facultades para, en protección de los consumidores, fiscalizar el cumplimiento de las leyes sobre protección al consumidor que estén bajo la jurisdicción de otras agencias y organismos del Estado Libre Asociado de Puerto Rico y referir a los mismos las querellas y notificar las infracciones para que éstos tomen la acción que proceda. 3 LPRA sec. 341f.

En consonancia, el Reglamento Núm. 8034 de 14 de junio de 2011, *Reglamento de procedimientos adjudicativos*, establece las normas reglamentarias atinentes a las órdenes y resoluciones sumarias, que a continuación reproducimos e impartimos énfasis:

> **Regla 11 –** *Órdenes y Resoluciones Sumarias*
>
> 11.1. El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

## C.

A través de la Ley Núm. 129 de 16 de agosto de 2020, *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921 *et seq.* (Ley Núm. 129-2020), se creó un nuevo esquema para el establecimiento de un seguro que proteja el edificio sujeto al régimen de propiedad horizontal contra riesgos. A esos fines, el Artículo 62 del mencionado estatuto permite que el Consejo de Titulares, con el voto de la mayoría, asegure el inmueble contra riesgos para cubrir las áreas comunes generales, procomunales y limitadas, así como otros riesgos no relacionados a la propiedad privada de los titulares.

> Artículo 62. — *Seguro del Edificio Contra Riesgos; Derechos Individuales de Titulares*
>
> Con el voto de la mayoría, el Consejo de Titulares podrá asegurar contra riesgos el inmueble para cubrir las áreas comunes generales, procomunales y limitadas de este, así como otros riesgos no relacionados a la propiedad privada de los titulares, para beneficio común de los titulares. Cuando se requiera por reglamentación federal y/o estatal, **o por el voto de dos terceras (2/3) partes de todos los titulares** que a su vez reúnan dos terceras (2/3) partes de participación en los elementos comunes, **el Consejo de Titulares podrá adquirir**

**pólizas para asegurar las áreas comunes generales, procomunales y limitadas de este, incluyendo los bienes privativos incorporados originalmente al edificio. Adquirido así este tipo de póliza, todos los titulares quedarán vinculados a sufragar la misma, incluidos los que se hubiesen opuesto**.

El tipo de póliza que decida adquirir el Consejo de Titulares no afectará ni restringirá de forma alguna el derecho de los titulares de asegurar por su cuenta, y para beneficio propio, su propiedad privada y elementos privativos de su apartamento.

El titular que posea un seguro particular para su apartamento, o que haya saldado su hipoteca, o que haya votado en contra de la decisión de dos terceras (2/3) partes del Consejo de Titulares de adquirir una póliza que asegure las áreas comunes generales, procomunales y limitadas de este, incluyendo los elementos privativos originales adheridos a la estructura, no queda exonerado de pagar la parte proporcional de cualquier seguro comunal adoptado por el Consejo de Titulares. La porción de los seguros correspondientes al beneficio propio de cada titular respecto a aquellos bienes privativos no adheridos originalmente a la estructura podrá ser atendido individualmente.

Todo titular podrá solicitar a la Junta de Directores la inspección de los documentos relacionados con los seguros comunales.

La Junta de Directores podrá sustituir el productor de seguros siempre y cuando, las cubiertas y condiciones del nuevo seguro sean las mismas, o de mayor alcance y beneficio, y al mismo, o menor costo de la que estuviera vigente al momento del cambio, previa aprobación del Consejo de Titulares. Corresponde al Consejo aprobar, por voto del Consejo de Titulares según dispuesto en este Artículo, la nueva póliza de seguros o su renovación.

Será responsabilidad de la Junta solicitar al productor de seguros un mínimo de tres (3) cotizaciones para cada renovación anual y mantener evidencia de las mismas por un periodo mínimo de tres (3) años, así como también mantener la evidencia del rechazo a cotizar de cualquier aseguradora, si alguna que así lo haya expresado. Dicha evidencia deberá estar disponible para la revisión de cualquier titular que así lo solicite. (Énfasis nuestro). Art. 62 de la Ley Núm. 129-2020, 31 LPRA sec. 1923g.

En cuanto a la representación de los titulares que conformarán esa

mayoría, el Artículo 51 del estatuto establece en parte que:

Cada titular tendrá derecho a un voto independientemente del número de apartamentos de que es propietario, para efectos del cómputo de mayoría numérica de titulares, y/o derecho al voto con arreglo al porcentaje correspondiente a su apartamento para efectos del cómputo de mayoría de porcentajes, dependiendo de la definición del concepto de mayoría que rija para el inmueble. Se computará el por ciento de participación que sea mayor entre los apartamentos que

pertenezcan a un mismo titular. Art. 51 de la Ley Núm. 129-2020, 31 LPRA sec. 1922w.

Asimismo, el Artículo 52 de la Ley Núm. 129-2020, prescribe ciertas normas atinentes a los acuerdos del Consejo de Titulares. En lo que nos concierne, preceptúa lo siguiente:

Artículo 52. — *Acuerdos del Consejo, Normas; Notificación de Ausentes*

[...]

**b) La mayoría requerida** reglamentariamente para la adopción de acuerdos **se computará tomando como cien por ciento (100%) el número de titulares presentes o representados al momento de votarse por el acuerdo, excepto en aquellos casos en que se requiera unanimidad o del voto de dos terceras partes (2/3) de todos los titulares,** que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, en cuyo caso, se requerirá dar cumplimiento con las disposiciones del inciso (c), siguiente.

**c)** Cuando los titulares presentes en una asamblea convocada para tomar un acuerdo que requiera unanimidad o de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes estos adoptasen dicho acuerdo, aquellos que, debidamente citados no hubieren asistido serán notificados de modo fehaciente y detallado del acuerdo adoptado, y, si en un plazo de treinta (30) días a partir de dicha notificación no manifestaren en la misma forma su discrepancia quedarán vinculados por el acuerdo que no será ejecutable hasta que transcurra tal plazo, salvo que antes manifestaren su conformidad.

La oposición a un acuerdo que requiera unanimidad o dos terceras partes (2/3) de todos los titulares que a su vez reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes deberá fundamentarse expresamente, bien en la asamblea o por escrito, según se dispone en el párrafo anterior, y en ningún caso podrá basarse en el capricho o en la mera invocación del derecho de propiedad. La oposición infundada se tendrá por no puesta. La declaración de un voto caprichoso será tomada por el Consejo de Titulares en la asamblea en cuestión.

Cuando un titular que no asistió a la asamblea, presente ante la Junta de Directores, su oposición a una determinación del Consejo de Titulares que requiera unanimidad o dos terceras partes (2/3) de todos los titulares que a su vez reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, la Junta de Directores determinará si la objeción fue fundamentada o no, y le notificará al titular su determinación. Si se determina que la oposición es infundada, se tendrá por no puesta. El titular podrá impugnar dicha determinación ante el Departamento de Asuntos del Consumidor, a partir de la fecha de notificación de la determinación de la Junta de Directores.

Una vez se acuerde realizar determinado gasto, obra, o proyecto que requiera el voto de dos terceras partes (2/3) de todos los titulares que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, los detalles o medidas accesorias para la ejecución y realización final de tal obra o proyecto, no estarán sujetos a la aprobación de todos los titulares, bastando para ello, en caso de requerirse una consulta al Consejo, la autorización por voto mayoritario. (Énfasis nuestro). Art. 52 de la Ley Núm. 129-2020, 31 LPRA sec. 1922x.

[…]

En lo pertinente, el Artículo 66 del precitado cuerpo estatutario establece que las querellas relativas a las cubiertas o los términos y condiciones de una póliza de seguros serán referidas a la Oficina del Comisionado de Seguros de Puerto Rico. Art. 66 de la Ley Núm. 129-2020, 31 LPRA sec. 1923k.

### III.

La recurrente arguye que el DACo incidió toda vez que concluyó que se cumplió con el requisito de obtener el voto de dos terceras partes (2/3) de todos los condómines al aprobar la póliza *full value*, según lo requiere el Artículo 62 de la Ley Núm. 129-2020, *supra*, sin antes haber analizado si se alcanzó dicha cifra. También alega que erró la agencia al omitir adjudicar el planteamiento de la recurrente de que lo acordado no reflejó lo aprobado en la asamblea.

En riposta, la parte recurrida argumenta, en suma, que en la asamblea se alcanzó el quórum y se obtuvo el umbral de votos de dos terceras partes (2/3) requeridos por ley para aprobar la moción de la contratación de la póliza *full value*. También sostiene que la recurrente no produjo prueba suficiente para sustentar sus alegaciones. Aduce además que el DACo no tenía jurisdicción sobre la querella, sino que era la Oficina del Comisionado de Seguros, conforme al Artículo 66 de la Ley Núm. 129-2020, *supra*.

No nos convence la postura de la señora Rodríguez Taboada. Asimismo, anticipamos que los errores señalados por la recurrente son

susceptibles de ser discutidos en conjunto, por lo que así obraremos. Veamos.

Con respecto al planteamiento jurisdiccional que realiza la parte recurrida, colegimos que no le asiste la razón toda vez que la señora Rodríguez Taboada compareció ante el DACo a los fines de impugnar una presunta violación a los requisitos establecidos en la Ley Núm. 129-2020, *supra*, que no versaban sobre los términos y condiciones de la cubierta de seguro *full value*. Por tanto, el DACo es quien tiene jurisdicción para atender asuntos como el del caso de epígrafe.

Respecto a los errores señalados, se desprende del expediente administrativo que, al presentar la querella, la recurrente alegó que en la asamblea se acordó modificar los elementos cubiertos por la póliza de seguro.[10] Luego de haber presentado la querella, **peticionó al DACo la resolución sumaria** de la reclamación.[11] No surge explícitamente de la minuta de la asamblea extraordinaria, que los presentes en la asamblea hayan acordado modificar ciertos elementos cubiertos por la póliza. Además, quedó documentado en la referida minuta que la selección de la póliza *full value* ocurrió con el requisito de dos terceras (2/3) partes prescritos en el Artículo 62 de Ley Núm. 129-2020, *supra*. En ese sentido, la señora Rodríguez Taboada estará sujeta a sufragar la póliza aunque se hubiese opuesto, según lo estatuye el precitado Artículo.

Así pues, razonamos que el foro recurrido resolvió de manera sumaria **según solicitado por la señora Rodríguez Taboada** y adjudicó la controversia con la prueba que tuvo ante sí. *Ergo*, el DACo actuó dentro de los parámetros de su ley habilitadora, sin ser arbitrario ni irrazonable, así como tampoco violó derechos constitucionales fundamentales. Los planteamientos esbozados por la recurrente no nos motivan a revocar el dictamen de la agencia impugnada.

---

[10] Véase, Entrada Núm. 1 del SUMAC-TA, Apéndice 1, pág. 8.
[11] Véase, Entrada Núm. 1 del SUMAC-TA, Apéndice 3, págs. 16-17.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución Sumaria* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones